Ethel K. Bennett et al., Respondents, *v.* Crescent Athletic-Hamilton Club, Appellant.

(Argued March 4, 1936; decided April 14, 1936.)

*Benjamin C. Loder* for appellant.

*Thomas J. O' Neill* and *Joseph G. Saile* for respondents. No ruling of the trial court against appellant was erroneous; but, assuming that there was an erroneous ruling, it did not affect any substantial right of the appellant, and, therefore, must be disregarded. (Civ. Prac. Act, § 106; *Post* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 62; *Goodman* v. *Central C. & A. Co.*, 219 App. Div. 723; *Hyde* v. *N. Y. C. & H. R. R. R. Co.*, 225 N. Y. 680; *Hodas* v. *Davis*, 203 App. Div. 297; *Fidelity & Deposit Co.* v. *Courtney*, 186 U. S. 342; *Walbrun* v. *Babbitt*, 16 Wall. 577.)

CROUCH, J. The plaintiff wife was injured on the evening of December 12, 1931, on the dining porch of the defendant's club house. In an action to recover damages for the injuries and for loss of services, the plaintiffs had judgment which was unanimously affirmed. A fibre rug which was curled up on the ends and edges to the extent of three or four inches, was negligently maintained on the floor of the porch. The wife caught her foot against the curled-up rug.

The questions of negligence and contributory negligence were for the jury on disputed evidence. We are here concerned with an error of law so prejudicial to the defendant as, in our judgment, to warrant reversal. Whether or not the alleged defect in the rug actually existed at the time of the accident and, if so, whether or not the defendant had long known of its propensity to curl up, were vital points in the case on which there was a sharp conflict in the evidence. The floor of the dining porch was of brick tile on which were placed a number of fibre rugs. Among plaintiffs' witnesses were three who had formerly been waiters serving in the dining porch. The substance of their testimony was that for two or three months before the accident the rugs, when dry, would curl up as described and that it was the common practice to take out the curl and flatten the edges by pouring on hot water and pressing them down with the foot.

The defendant on its part called two employees. One of them, who had been absent from his employment when the accident happened, gave little material testimony on his direct examination, merely characterizing the rugs shown on a photographic exhibit as looking like the type and size of rugs that were on the porch. He was also asked whether he had signed a statement for the plaintiffs' lawyer and he said he had signed no statement. Thereupon, under the guise of cross-examination, he was questioned by plaintiffs' counsel, at length and repetitiously,

with reference to statements claimed to have been made by him six months after the accident in the course of an interview with a law clerk in the presence of the plaintiff husband and of another man named Vanzetta. Objection was promptly made that as cross-examination the questions were improper and that counsel was making the witness his own. The court so ruled, and the examination was permitted to continue on that basis. The witness denied that in the course of the interview he had taken a pitcher of hot water and shown how the waiters used to water-down the rugs. He denied that he had told Vanzetta to get the water or that Vanzetta did so. He denied that the rugs had ever curled up before the accident or that the waiters had been instructed to treat them with hot water. He denied that he had told his interviewers that they should keep quiet what he had told them. In rebuttal, the court, notwithstanding the ruling which had recognized the witness as being plaintiffs' own, permitted the plaintiffs, over specific objection and exception, to call the law clerk, the plaintiff husband and Vanzetta to testify to contradictory statements made during the interview. The ruling was plain error. On the entire subject-matter of the interview, plaintiffs had made the witness their own. They were bound by the answers they had elicited. They could not impeach him. Whatever one may think about the desirability of the rule or of the logic by which it is explained (Cf. 24 Columbia Law Review, p. 715), it is too firmly seated (*People* v. *DeMartini*, 213 N. Y. 203, 212) to be changed by the courts (Cf. Laws of 1936, ch. 191) or disregarded in an instance where substantial damage may very well have resulted from its breach.

Here it is clear that the impeaching testimony of the three witnesses not only served to discredit the witness, but in reality added a powerful element of affirmative proof to the plaintiffs' case, to which they were not entitled.

The judgments should be reversed and a new trial granted, with costs to the appellant to abide the event.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CRANE, Ch. J., taking no part.

Judgments reversed, etc.